U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAR 2 8 2006

ROBERT H. SHEMWELL, CLERK
BY _____
     DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JOHN M. DICKENS | |
| -vs- | CIVIL ACTION NO. 05-1785 |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, AND DYNAMIC INDUSTRIES, INC. | JUDGE LITTLE |

## MEMORANDUM RULING

Before the court are two motions to dismiss [Docs. ## 8, 11] filed by defendants Prudential Insurance Company of America ("Prudential") [#8] and Dynamic Industries, Inc. ("Dynamic") [#11]. For the following reasons, the motions to dismiss are GRANTED IN PART AND DENIED IN PART.

## PROCEDURAL BACKGROUND

On 9 September 2005, plaintiff John M. Dickens ("Dickens") filed a petition in the Seventh Judicial District Court against the defendants relating to a long-term disability plan [#1]. On 12 October 2005, Prudential removed the case to federal court [#2]. On 24 October 2005, Prudential filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) [#8]. Dickens filed a memorandum in opposition to Prudential's motion to dismiss on 8 November 2005 [#10]. On 14 November 2005, Dynamic filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) [#11], which is essentially the same motion as that filed on 24 October 2005 by Prudential [#8]. On 29 November 2005, Dickens filed a supplemental opposition to

Prudential's motion to dismiss [#18]. On 30 November 2005, Dickens filed an opposition to Dynamic's motion to dismiss [#19]. On 5 December 2005, Prudential replied to Dickens's opposition [#22]. On 15 December 2005, Dickens, with leave from the court, responded to Prudential's reply [#25].

## **FACTUAL BACKGROUND**

This dispute involves a long-term disability plan purchased by Dickens from Prudential while working offshore as an employee of Dynamic. Dickens sustained very serious injuries in an automobile accident on 11 September 2002. As a result, Dickens began receiving $2400 per month in disability payments through the long-term disability plan.

Prior to settling a tort suit arising from the automobile accident, Dickens, through counsel, allegedly spoke with Prudential to ascertain whether or not a settlement would implicate the amount of long-term disability payments he would continue to receive from Prudential. Allegedly, Prudential via its telephone representative told Dickens's counsel that it did not think that a settlement would affect his payments but that if it would, Prudential would inform Dickens by 15 October 2004. Dickens alleges that no such information was ever provided by Prudential.

After Dickens settled his tort suit, however, Prudential reduced his monthly payment, eventually lowering it from $2400 per month to $100 per month. The justification for this reduction was an offset based on treatment of his settlement as income. Dickens alleges that the relevant provision in the policy, Paragraph 8, formerly listed under "What Are Deductible Sources of Income?" the following language: "The amount that you receive, due to your

2

disability, from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise." Compl. ¶ 23. According to Dickens, "[t]he Louisiana Department of Insurance had Prudential change Paragraph 8 . . . so that it now reads as follows: 'The amount <u>identified as earnings replacement or disability income benefits</u> that you receive, due to your disability, from a third party (after subtracting attorney's fee) by judgment, settlement, or otherwise." Id. ¶ 26 (emphasis added). Dickens's settlement allegedly "include[d] damage[s] for pain and suffering, mental anguish, medicals, past and future and other non-income related claims." Id. ¶ 27. As such, Dickens filed suit in state court, seeking "a judgment from this Court reinstating his benefits, retroactive from the date they were reduced, with interest and penalties." Id. ¶ 30. Dickens asks for a declaratory judgment that the long-term disability plan at issue is not subject to the Employer Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Id. ¶ 34. In the alternative, Dickens asks for a declaratory judgment that "LA R.S. 22:657 and/or 22:658 and 22:1220 regulate the business of insurance and are not preempted by ERISA." Id. ¶ 47.

Dickens also asks that his "benefits under the Prudential policy (Plan 501) be reinstated" and that he "be awarded penalties under the Louisiana Insurance Code, for Prudential's failure to pay policy benefits." Id. Prudential and Dynamic both moved to dismiss the petition on the basis of ERISA preemption of the state law claims. Dickens responds that the disability plan in question falls under a "safe harbor" provision specifically exempting certain policies from ERISA, or in the alternative that relevant Fifth Circuit jurisprudence indicates that the plan is not covered by ERISA.

3

## LEGAL STANDARDS

I. **Federal Rule of Civil Procedure 12(b)(6)**

In evaluating a motion to dismiss under FED. R. CIV. P. 12(b)(6), the court accepts "the facts alleged in the complaint as true, [but] if it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks," the motion to dismiss will be granted. C.C. Port, Ltd. v. Davis-Penn Mortgage Co., 61 F.3d 288, 289 (5th Cir. 1995). In other words, the plaintiff must provide factual assertions in the complaint that, if taken as true, could lead to relief. While failure to provide facts to support a claim may lead to dismissal under FED. R. CIV. P. 12(b)(6), the court must construe the complaint liberally. Kane Enters. v. MacGregor (USA) Inc., 322 F.3d 371, 374 (5th Cir. 2003).

"[C]onclusory allegations or unwarranted deductions of fact" are not sufficient, however, to avoid dismissal. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (internal quotation marks omitted). Instead, the "plaintiff must plead specific facts." Id. (internal quotation marks omitted). In addition, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

Even if the factual allegations are not conclusory, though, dismissal may still be appropriate if "the law simply may not afford relief on the basis of the facts alleged in the complaint." Walker v. S. Cent. Bell Tel. Co., 904 F.2d 275, 277 (5th Cir. 1990). As such, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989).

4

## II. ERISA Preemption

ERISA governs:

> Any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ."

29 U.S.C. § 1002(1). To identify an ERISA plan, courts look to see whether "a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Memorial Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 240-41 (5th Cir. 1990) (citing Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc)).

The existence of an ERISA plan is generally a question of fact. See McDonald v. Provident Indem. Life Ins. Co., 60 F.3d 234, 235 (5th Cir. 1995). If no dispute exists regarding the applicability of ERISA to a plan, however, state law claims that are preempted by ERISA may be dismissed pursuant to FED. R. CIV. P 12(b)(6). See McNeil v. Time Ins. Co., 205 F.3d 179, 192 (5th Cir. 2000) (upholding district court's dismissal of state law claims that were preempted by ERISA).

To determine if ERISA governs a particular plan, a court must ask "whether the plan (1) exists; (2) falls within the safe harbor exclusion established by the Department of Labor; and (3) meets the ERISA requirement of establishment or maintenance by an employer for the purpose of benefitting the plan participants." McNeil, 205 F.3d at 189. Dickens does

not dispute that a plan exists. He argues instead that the plan fits into the "safe harbor" provisions designed to exempt certain plans from ERISA even if they would otherwise be covered. 29 C.F.R. § 2510.3-1(j); see also Memorial Hosp. Sys., 904 F.2d at 241 n.6.

## III. The "Safe Harbor" Exception

The "safe harbor" provision is a Department of Labor regulation that states that a plan is not covered by ERISA if it has the following four features:

> 1) No contributions are made by an employer or employee organization;
>
> 2) Participation [in] the program is completely voluntary for employees or members;
>
> 3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> 4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with the payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j)(1)-(4). Only if all four of the features are present is a plan otherwise covered by ERISA not covered by virtue of the "safe harbor." Nevertheless, under Fifth Circuit jurisprudence there are also some plans that do not meet the "safe harbor" requirements but are still not covered by ERISA.

6

## IV. The Fifth Circuit Test

The Fifth Circuit test for determining whether a plan is governed by ERISA is broader than the "safe harbor" provision discussed above. "The fact that a plan does not meet the Department of Labor regulations for exclusion from ERISA does not mean that the plan is necessarily covered by ERISA." Hansen v. Cont'l Ins. Co., 940 F.2d 971, 976 (5th Cir. 1991). The Hansen court went on to reiterate: "Put another way, the plans excluded from ERISA coverage by the Department of Labor regulations are not the only plans not covered by ERISA." Id. As such, it is necessary to look beyond the "safe harbor" provision in determining if a plan is exempt from coverage by ERISA.

If it is established that a plan exists and that it is not within the "safe harbor" provision, the court then asks whether the employer "established or maintained the program with a purpose of providing certain benefits to its employees." Id. at 978. In making this inquiry, "the court should focus on the employer and its involvement with the administration of the plan." Id. For example, a plan does not fall under ERISA if "an employer does no more than purchase insurance for her employees, and has no further involvement with the collection of premiums, administration of the policy, or submission of claims." Id.

Finally, in addition to the above requirements, the employer must "have had a purpose to provide health insurance, accident insurance, or other specified types of benefits to its employees." Id. Dickens does not dispute that this requirement is met in this case.

## DISCUSSION

It is undisputed that factors 1, 2, and 4 of the "safe harbor" test have been satisfied. In essence, therefore, the court must make two inquiries here. The first is whether Dynamic satisfied the third factor of the "safe harbor" test, thereby exempting the plan from ERISA. If not, the court must then ask if the plan is still not governed by ERISA on the basis that Dynamic never "established or maintained" the plan under relevant Fifth Circuit jurisprudence. Hansen, 940 F.3d at 978.

### I. "Safe Harbor" Factor Three Analysis

Dickens does not dispute that Dynamic is the plan sponsor and plan administrator as well as the agent for service of legal process listed in the summary plan description. This court stated in Bailey v. Cigna Insurance Co. that "[s]ponsorship of the Plan far exceeds the limited role permitted by 29 C.F.R. § 2510.3-1(j)(3)." No. 01-1115, 2001 U.S. Dist. LEXIS 24885, at *8 (W.D. La. Dec. 17, 2001). As such, this plan does not fall within the "safe harbor" provision because the employer has a responsibility, as plan sponsor, that falls outside of 29 C.F.R. § 2510.3-1(j)(3).

### II. Fifth Circuit Jurisprudence

#### a. Hansen v. Continental Insurance Co.

The defendants argue that Hansen addressed a situation similar to the case at bar, and that as such the court should dismiss the state law claims as preempted like the court in Hansen did. 940 F.2d 971, 979 (5th Cir. 1991). On the other hand, Dickens attempts to distinguish the present case from Hansen, instead comparing it to a First Circuit case,

Johnson v. Watts Regulator Co., 63 F.3d 1129 (1st Cir. 1995), in which a plan was found not to be governed by ERISA.

In Hansen, the Fifth Circuit found that the plan at issue was an ERISA plan and therefore affirmed the district court's dismissal of state law claims on the ground of ERISA preemption. Hansen, 940 F.3d at 979. The court, in finding "some meaningful degree of participation by the employer in the creation or administration of the plan," observed a number of features of the plan. Id. at 978.

First, the employer in Hansen, had a "full time employee benefits administrator who accepted claim forms from employees and submitted them to the insurer." Id. Here Prudential attached a signed, undisputed affidavit from the chief financial officer of Dynamic to its reply brief. This affidavit states that "Dynamic employed/employs a full time Benefits Administrator who accepted claim forms and submitted them to Prudential." Clement Aff. ¶ 4. In fact, Dickens's claim itself was submitted by Dynamic to Prudential, presumably through this benefits administrator.

Second, the Hansen court noted that the employer offered the particular benefit at issue, an accident insurance plan, in conjunction with other plans which "clearly fell within ERISA's coverage." Hansen, 940 F.2d at 978. Dickens admits to a similar situation in this case, stating that "[t]here are other portions of the Dynamic insurance program which are paid for by Dynamic and administered by Prudential which are ERISA plans." Pl.'s Resp. to Reply 6. In fact, the summary plan description includes both the short and long term insurance programs.

9

Dickens argues that a third feature of the plan in Hansen distinguishes it from this case. In Hansen, materials with the employer's logo on them were given to employees, which "encouraged the employees to consider carefully participating in the group accidental death and dismemberment plan, as it would be a valuable supplement [to their] existing coverages." Hansen, 940 F.3d at 978 (internal quotation marks omitted). Dynamic has not pointed the court to this type of language in the summary plan description, nor has the court's review of the record shown this type of language in the summary plan description. Cf. Malacara v. Garber, 353 F.3d 393, 405 (5th Cir. 2003) (noting, in similar summary judgment context, that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition").

### b. Johnson v. Watts Regulator Co.

Dickens offers Johnson v. Watts Regulator Co., a First Circuit case, as a fact scenario more akin to the present case and argues that this court, like the court in Johnson, should find that the plan is not covered by ERISA. 63 F.3d 1129 (1st Cir. 1995). The facts in Johnson, however, are different from the facts in this case in several significant respects.

First, in Johnson the court noted that the Hansen court may have been evaluating employer neutrality from the employer's perspective, whereas the Johnson court focuses on the employee's perspective. 63 F.3d at 1137 n.6; see also Barrett v. Ins. Co. of N. Am., 813 F. Supp. 798, 800 (N.D. Ala. 1993) ("The court's decision hinged on the intent of the employer."). While it is not necessary for us to evaluate whether this purported difference is meaningful, it is worth pointing out that Johnson, unlike Hansen, is not binding on this

court. Salazar v. Dretke, 419 F.3d 384, 404 (5th Cir. 2005) (noting that cases from other circuits are not binding).

The court in Johnson noted that the employer "performed only administrative tasks, eschewing any role in the substantive aspects of program design and operation. It had no hand in drafting the plan, working out its structural components, determining eligibility for coverage, interpreting policy language, investigating, allowing and disallowing claims, handling litigation, or negotiating settlements." 63 F.3d at 1136. Dickens argues that the inaction of Dynamic in this plan is comparable. An examination of the facts in Johnson, however, shows the flaws in this argument.

In Johnson, the court noted that the insurer created a sales brochure that incorporated a cover letter written by the employer but typeset by the insurer, and that this package was delivered to the employees. The brochure and the letter, however, did not mention ERISA. Id. at 1136 ("[N]either the letter nor any other passage in the brochure mentioned ERISA."). In contrast, the summary plan description here notes that its inclusion is meant to comply with ERISA. Prudential Mot. Dismiss Ex. A 57. In addition, it mentions ERISA several other times as well, even noting that "[a]s a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA)." Prudential Mot. Dismiss Ex. A 61.

Furthermore, in this case "the employer reserves the right to change or terminate the plan." Id. at 58. If employees have questions regarding the plan, they "should contact the plan administrator. If [they] have any questions about this statement or about [their] rights

11

under ERISA," they can contact the Department of Labor. Id. at 62.

It is clear from these details that Dynamic's role with respect to the long term insurance plan places it within the confines of ERISA. The "safe harbor" provision does not apply. Examining the relevant Fifth Circuit caselaw indicates that this plan is covered by ERISA. As such, all state law claims are preempted and are therefore dismissed. McNeil v. Time Ins. Co., 205 F.3d 179, 191 (5th Cir. 2000).

Prudential and Dynamic argue that the entire petition be dismissed. The petition, however, contains an alternative claim under ERISA. As it stands, this claim contains basically no detail. As such, the plaintiff shall amend the complaint to proceed under ERISA.

## CONCLUSION

For the foregoing reasons, the motions to dismiss filed by Prudential [#8] and Dynamic [#11] are GRANTED IN PART AND DENIED IN PART. All state law claims are DISMISSED WITH PREJUDICE. The alternative complaint under ERISA is not dismissed. Dickens is ORDERED to amend the complaint within 30 days.

Alexandria, Louisiana

28 March 2006

F. A. LITTLE, JR.
UNITED STATES DISTRICT JUDGE